UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                              Case No. 16-20227

     v.                                     Hon. Bernard A. Friedman

RYON LENELL TRAVIS,
      a/k/a "Dontrez,"

              Defendant.

---

## GOVERNMENT'S TRIAL BRIEF

---

### I.    Statement of Charges

An indictment charges Defendant with the following crimes:

(1)    Production of child pornography in violation of 18 U.S.C. § 2251(a);

(2)    Transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1);

(3)    Possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B);

(4)    Sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a)(1).

(ECF No. 12, PageID 20–24). Defendant has pleaded not guilty and has elected to proceed to trial. Trial in this matter is set to begin on July 19, 2022.

The government requests that the Court not provide a copy of the indictment to the jury. Count Four—the sex trafficking charge—alleges that the Defendant "knowingly recruited, enticed, harbored, transported, provided, obtained, *advertised,* maintained and *solicited*" AV-1. (ECF No. 12, PageID 22, emphasis added.) At trial, the government will not assert that Defendant "advertised" or "solicited" AV-1 and will instead rely on the other seven verbs: recruit, entice, harbor, transport, provide, obtain, and maintain.

Instead of giving the indictment to the jury, the government requests that the Court read a statement of the charge to the jury prior to opening statements. A suggested statement of the charge is below:

Defendant Ryon Lenell Travis, a/k/a Dontrez, is charged in this case with committing the following four crimes:

1. Count One: Employing, using, persuading, inducing, enticing, or coercing a minor to engage in any sexually explicit conduct for the purpose of producing a visual depiction of such conduct.

2

Defendant is alleged to have committed this crime between January 2015 and March 2, 2016 in the Eastern District of Michigan.

2. Count Two: Transporting child pornography by any means, including by computer. Defendant is alleged to have committed this crime on January 27, 2016, in the Eastern District of Michigan.

3. Count Three: Possessing material that contains an image of child pornography. Defendant is alleged to have committed this crime on March 2, 2016, in the Eastern District of Michigan.

4. Count Four: Recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining by any means Adult Victim One, knowing that force, threats of force, fraud, coercion or any combination of such means would be used to cause Adult Victim One to engage in a commercial sex act. Defendant is alleged to have committed this crime from January 2014 to March 21, 2016, in the Eastern District of Michigan.

## II.   Factual Background

On March 2, 2016, West Bloomfield police officers searched
Defendant's residence on Tuller Street in Detroit for evidence of identity
theft. During the search, the police seized electronic devices from the
home. Defendant was present during the search and spoke with officers.
Defendant showed the police which phone belonged to him—an LG
Leon cell phone—and entered the passcode into the device to unlock it.

Back at the police department, Detective Erik Hamilton reviewed
Defendant's LG Leon phone, and observed images depicting the sexual
assault of a young child. Detective Hamilton stopped searching the
phone and obtained a new search warrant authorizing a search for
images of child sexually abusive material. The complete review of
Travis's cell phone recovered numerous images depicting the oral and
anal penetration of a young girl, MV-1. Police noticed that in some of
the photographs, a distinctive bedsheet with a blue and green pattern
was visible underneath MV-1. When the detectives examined
photographs taken during the search warrant execution, they saw that
the same sheet was in one of the bedrooms on Tuller Street. West

Bloomfield PD made attempts to identify MV-1 but was initially unsuccessful.

West Bloomfield PD contacted federal authorities, and HSI began to investigate the child pornography located on Defendant's phone. On March 21, 2016, HSI executed a federal search warrant at the Tuller Street address. When officers entered the home, they found an adult victim (AV-1) restrained in the living room with a chain around her neck connected to a pole in the middle of the room. Once she was released and taken out of the home, AV-1 told agents that Defendant had chained her to the pole so that she would not leave. She also stated that Defendant was prostituting her and the other female residents in the home, all of whom Defendant considered his "wives."  During the search of the home, agents seized numerous items, including a blue and green bedsheet, a water jug depicted in the child pornography, and the chain and locks used to restrain AV-1.

Defendant spoke with HSI agents. He admitted that he was the only adult male who resided in his residence. He admitted to sending a text message with images of child pornography. He claimed he found the images of child pornography on someone else's phone, though he did

not know whose, and sent them to his own phone. He said that MV-1 was his daughter, but refused to provide her name or custodian's name to law enforcement, claiming that it was "confidential." Defendant further stated that MV-1 stayed at his house at some point a few months prior, maybe around Christmas, New Year's or Martin Luther King Day.

HSI ultimately confirmed that MV-1 was Defendant's daughter born in 2010. HSI Computer Forensic Agent Chad Cable reviewed Defendant's LG Leon phone and determined that the images depicting MV-1's sexual abuse were taken on April 25, 2015, when MV-1 was four years old, and on January 1, 2016, when MV-1 was five years old. The images were contained on the phone's SD card.

## III.  Potential Legal Issues at Trial

### A.  Introduction of Relevant Evidence

The West Bloomfield Police Department initially searched Defendant's residence for evidence of fraud. At trial, the government will present the testimony of West Bloomfield police officers. The officers will state that they searched Travis's residence for fraud, but they will not provide any details about the identity theft investigation

or how Defendant was implicated. They will not describe the incriminating evidence of fraud located in Defendant's home. However, the witnesses must be allowed to tell the jury why they were there in the first place—executing a search warrant at Defendant's residence for an unrelated fraud investigation—when they uncovered evidence of child pornography. This limited reference is relevant to explain to the jury why law enforcement entered the home, but is not unfairly prejudicial to Defendant under Federal Rules of Evidence 401 and 403.

## B.     Defendant's out-of-court statements to law enforcement are inadmissible hearsay if offered by the defense.

The Court should prohibit Defendant from presenting his own statements. It is well-settled that defendants cannot introduce their own, self-serving exculpatory statements. *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) (citing *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996), *cert. denied*, 522 U.S. 934 (1997)). While the Federal Rules of Evidence allow the government to introduce inculpatory statements made by a defendant, the "Rules do not . . . provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party." *Id.*

Thus, while the government is permitted to introduce some or all of a defendant's statements against him as non-hearsay admissions of a party-opponent under Rule 801(d)(2), a defendant is not permitted to introduce his own statements under the same Rule.

This rule applies equally to the evidence the defendant seeks to introduce in his own case as it does to the evidence he tries to elicit through the cross-examination of witnesses. Here, the government intends to introduce some of the statements that Travis made to law enforcement on March 2, 2016 and March 21, 2016. The government may also introduce portions of Travis's statements from jail calls.

Defendant identified his LG cell phone to West Bloomfield detectives, which was later found to contain child pornography. Defendant also told the detectives he allowed his minor son to access his phone and claimed he saw his child looking at pornographic websites. HSI Special Agents interviewed Defendant during the execution of a subsequent search warrant. During the second interview, Defendant reiterated the claim that his minor son used his phone to take and send pictures. Defendant denied knowing who the male depicted in the child pornographic images was and claimed he found them on an unknown

person's phone and sent them to his phone. Defendant denied he was

the adult male in the images of MV-1's sexual abuse. Also, during the

subsequent search warrant, HSI found an adult female chained to a

pole. Defendant claimed she was chained because they were about to

"get freaky."

Although the government may introduce such statements as

party-opponent statements, Defendant cannot introduce them through

his own testimony or the testimony of other witnesses. *See United

States v. Holden*, 558 F.3d 698, 706 (6th Cir. 2009). Defense counsel

should not be allowed to ask questions about Defendant's denials to law

enforcement, his alternative explanations for why child pornography

was on his phone, or his statement about why the adult female was

chained to the pole. For example, he may not inquire "didn't Mr. Travis

tell you his son accessed his phone?" "didn't Mr. Travis deny knowing

who was in the photographs?" "didn't Mr. Travis tell you he and the

female were about to engage in sexual behavior?" Likewise, defense

counsel may not introduce jail calls or other portions of calls to present

Defendant's additional statements. Counsel should not be allowed to

ask questions about the introduction of the calls, such as "You did not

admit all of Travis's calls?" "You only selected portions or clips of the calls that were favorable?" "You did not introduce calls or portions of calls that were favorable to Mr. Travis, you left those out?" If the government does not introduce the statements, such questions or attempts to introduce calls imply to the jury that Defendant made exculpatory statements that were otherwise admissible, but the government is suppressing them from evidence.

Nor is Defendant permitted to enter any portion of his statements under the doctrine of completeness. *United States v. Gallagher*, 57 F. App'x 622, 628-29 (6th Cir. 2003) ("The trial court properly concluded that the admitted part of the defendant's statement—his admissions that he was a felon, knew that he was not to possess a firearm, and that his female companion had nothing to do with the crime—did not require appellant's additional self-serving exculpatory comments for completeness...'the completeness doctrine embodied in Rule 106 should not be used to make something admissible that would otherwise be excluded.'") (internal citations omitted); *United States v. Howard*, 216 F. App'x 463, 472-73 (6th Cir. 2007) (defendant's additional statement was not admissible under the doctrine of completeness because

"[e]xculpatory hearsay may not come in solely on the basis of completeness."). To allow this would give Defendant the opportunity to attempt to bolster his defense without ever testifying under oath and being subject to cross examination. Thus, Defendant should be prohibited from introducing his self-serving, exculpatory statements at trial.

### C.   Introduction of Prior Consistent Statement

At trial, if the defense insinuates that AV-1's desire to leave or stop engaging in prostitution was a recent fabrication in response to the police investigation, or if the government needs to rehabilitate AV-1's credibility as a witness because she was attacked on another ground, the government will seek to introduce AV-1's prior consistent statements pursuant to Federal Rule of Evidence 801(d)(1)(B)(i) or (ii).

According to the Rule, such statements are not hearsay and are admissible as substantive evidence if (1) the declarant testifies and is subject to cross-examination about a prior statement; and (2) the statement is consistent with the declarant's testimony. The declarant, AV-1, will testify consistently with her prior statements and will be subject to cross examination. Furthermore, her prior statements can be

introduced not just through AV-1, but through witnesses other than the declarant. See *United States v. Green*, 258 F.3d 683, 692 (7th Cir. 2001). Therefore, if the defense attacks AV-1's credibility as a witness or suggests her claims were a recent fabrication, the government will seek to introduce AV-1's prior consistent statements.

### D. Other acts of prostitution by AV-1 are irrelevant and inadmissible under Rule 412

Federal Rule of Evidence 412 states that in cases involving allegations of sexual misconduct, "evidence offered to prove that a victim engaged in other sexual behavior" and "evidence offered to prove a victim's sexual predisposition" are inadmissible. Fed. R. Evid. 412(a).

Rule 412 is designed to encourage victims to come forward against offenders without fearing invasion of their privacy, embarrassment, and unfair stereotyping that result from unnecessary inquiry into their sexual past. Fed. R. Evid. 412, Advisory Committee Notes (1994). The Rule attempts to accomplish these objectives by "barring evidence relating to the alleged victim's sexual behavior or alleged sexual predisposition, whether offered as substantive evidence or for impeachment, except in designated circumstances in which the

probative value of the evidence significantly outweighs possible harm to the victim." *Id*.

There are only three exceptions to this rule in criminal cases. Under the rule, the following evidence is admissible in limited circumstances:

    a) evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;

    b) evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and

    c) evidence whose exclusion would violate the defendant's constitutional rights.

Fed. R. Evid. 412(b)(1).

If a defendant wishes to introduce evidence of a victim's prior sexual history, he bears the burden of showing it is admissible pursuant to one of the exceptions enumerated in Rule 412(b). The defendant must file a motion at least 14 days before trial and serve the motion on the victim or her representative. Fed. R. Evid. 412(c)(1). Defendant has filed

no such motion here. In an abundance of caution, the government requests a ruling prohibiting Defendant from introducing evidence prohibited by 412 or questioning the victim about her sexual history.

Courts have consistently upheld the exclusion of evidence regarding a victim's past sexual history and alleged sexual predisposition. *See United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015) (affirming district court's decision to exclude evidence of victims' prior history of prostitution); *see also United States v. Ogden*, 685 F.3d 600, 604-05 (6th Cir. 2012) (evidence of the victim's online conversations, which included sending explicit images of herself to the other men, inadmissible); *United States v. Jackson*, 2014 WL 1660062, at *4-5 (W.D. Mich. April 25, 2014) (denying defendant's motion to introduce evidence that minors previously engaged in prostitution); *United States v. Maksimenko*, No. 05-80187, 2007 WL 522708, at *1 (E.D. Mich. Feb. 14, 2007) (precluding the introduction of evidence relating to the victim's past sexual behavior or predisposition with anyone other than the defendant); *Gowens v. Tidwell*, 2013 WL 2285446, at *1 (E.D. Mich. May 23, 2013) (evidence of victim's involvement in three temporary Muslim marriages where she

exchanged money for sex acts excluded under Rule 412); *Evans v. Bd. of Educ. Sw. City Sch. Dist.*, 2012 WL 4481421, at \*2 (S.D. Ohio Sept. 27, 2012) ("Whether the victims had engaged in other sexual behavior with other partners simply has no relevance to whether they consented to or welcomed the advances in the particular instances at issue in this case."). Evidence that a victim is sexually active with another person is neither relevant nor probative; rather, admitting such evidence serves only to embarrass the victim and tarnish her reputation.  *See Gagne v. Booker*, 680 F.3d 493, 518 (6th Cir. 2012); *United States v. Cardinal*, 782 F.2d 34, 36 (6th Cir. 1986).

Notably, courts have explicitly extended the protections afforded by Rule 412 to victims of sex trafficking.  *United States v. Williams*, 564 F. App'x 568, 575-77 (11th Cir. 2014) (unpublished) (applying Rule 412 to sex trafficking prosecution); *United States v. Valenzuela*, 495 F. App'x 817, 819 (9th Cir. 2012) (unpublished) (same); *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012) (same); *United States v. Elbert*, 561 F.3d 771, 776-78 (8th Cir. 2009) (same); *United States v. Anderson,* 139 F.3d 291, 303 (1st Cir. 1998) ("We fail to see how evidence of prostitution outside the offense conduct would have any probative value

regarding the truthfulness of the two girls."); *United States v. Gardner,* No. 16-20135, 2016 WL 5404207, at *2-3 (E.D. Mich. Sept. 28, 2016) (Drain, J.); *Jackson,* 2014 WL 1660062, at *2 ("Evidence that the [victims] engaged in prostitution for other pimps or on their own does not address any elements of the offense with which Defendant is charged in the Indictment.").

Specifically, evidence that a victim engaged in prostitution before or after her encounter with a defendant constitutes evidence of "other sexual behavior" or alleged "sexual predisposition" and is therefore inadmissible. *See, e.g., Williams*, 564 F. App'x at 575 (excluding evidence of victims' acts of prostitution that occurred after the defendant's arrest); *Valenzuela*, 495 F. App'x at 819 (excluding evidence of victims' prostitution acts that occurred before the defendants recruited them).

Here, the government must prove that Defendant (1) knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained AV-1, (2) knowing or recklessly disregarding that that force, threats of force, fraud, or coercion would be used to cause her to engage in a commercial sex act, and (3) that the offense affected interstate

commerce.  Past or subsequent voluntary prostitution by the victims is irrelevant to these elements.  *See Valenzuela*, 495 F. App'x at 820. Whether AV-1 ever engaged in voluntary prostitution before or after she encountered Defendant is irrelevant, and therefore inadmissible. As the court noted in *Gardner*, introducing evidence of the victims' unrelated acts of prostitution "would solely go to reinforce a narrative that she acted consistent with past sexual behavior, a line of reasoning deemed so extremely prejudicial as to warrant special treatment under the Federal Rules of Evidence."  2016 WL 5404207, at *3 (*quoting United States v. Gemma*, 818 F.3d 23, 34-35 (1st Cir. 2016)) (internal quotation marks omitted).  Accordingly, the Court should prohibit Defendant from questioning AV-1 about prostitution activity that occurred before or after she encountered Travis.  This includes any evidence that AV-1 engaged in prostitution before she met Defendant or after she escaped him.

### E.   MV-1 and AV-1's identity should be protected during trial

Given that AV-1 will be providing sexually related testimony, the government moves pursuant to 18 U.S.C. § 3509(d)(3) to allow her to testify using her first name only and to withhold disclosing her home

address or current place of residence. And although MV-1 will not be

testifying, the government will refer to her by her first name only.

Section 3509(d)(3) permits the Court to issue an order "protecting a

child from public disclosure of the name of or any other information

concerning the child in the course of the proceedings, if the court

determines that there is a significant possibility that such disclosure

would be detrimental to the child." MV-1 was a minor at the time of the

offense and is still a minor today. Section 3509(d)(3) "highlights the

public interest in protecting young victims of sex crimes." *United States

v. Paris*, No. CR 03:06-CR-64(CFD), 2007 WL 3124724, at *2 n.2 (D.

Conn. Oct. 24, 2007).

Such protective measures have been granted in other cases

involving victims. See, *e.g., United States v. Gardner*, No. 16-20135,

2016 WL 5404207, at *4-6 (E.D. Mich. Sept. 28, 2016) (limiting

identification of sex trafficking victim who was a minor at the time of

the offense and 18 at the time of trial to the victim's first name and first

initial of her last name); *United States v. Royal*, 442 F. App'x 794, 795

n.1 (4th Cir. 2011) ("Because the victims were minors at the time of the

offense, the record refers to them by first name only."); *United States v.*

*Kelly*, No. 07-CR-374 (SJ), 2008 WL 5068820, at *1–2 (E.D.N.Y. July 10, 2008) (allowing adult witness to testify under her first name and first initial of her last name in a trial for sex trafficking); *Paris*, 2007 WL 3124724, at *1 (granting motion to refer to child and adult victim-witnesses by their first names and first initial of their last names to protect their identities); *United States v. Harris*, No. 2:14CR76, 2016 WL 3190482, at *1 (E.D. Va. June 6, 2016), aff'd, No. 15-4451, 2016 WL 3524626 (4th Cir. June 28, 2016) (finding the court had "inherent authority under the First Amendment of the United States Constitution, and the common law, to protect the identity of such witnesses" where "warranted by the relevant case-specific circumstances"). Courts look to the "likely adverse personal, professional and psychological consequences of linking [victims'] identities to their past lives as sex workers." *United States v. Thompson*, No. 14-CR-228A, 2016 WL 1584382, at *7 (W.D.N.Y. Apr. 6, 2016) (quoting Paris, 2007 WL 1484974, at *2). Courts have also found "a compelling interest in encouraging crime victims to testify by protecting them from the adverse consequences of testifying." *Id*.

The measures outlined above are necessary to protect MV-1 and AV-1 from potential harassment from the media and others, undue embarrassment and other adverse consequences that may result from the nature of the evidence and the charges. Use of their first names only will not impair Defendant's in-court examination or out-of-court investigation. Similarly, permitting AV-1 to withhold her home address or current place of residence will not impair the defense's ability to cross-examine her. The government will provide a photograph of MV-1 and AV-1 during jury selection to identify them to potential jurors. Using MV-1 and AV-1's first name only will also comply with their right "to be treated with fairness and with respect for the victim's dignity and privacy." Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(8).

## IV.   Conclusion

The government believes this to be a very straight-forward case.

The evidence will show that defendant used MV-1 to produce child

pornography, and that he transported and possessed the images that he

created. In addition, defendant forced AV-1 to engage in commercial sex

by placing a lock and chain around her neck so that she could not leave

the residence. The government expects to present approximately ten

witnesses.

Respectfully Submitted,

Dawn N. Ison
United States Attorney

*s/ Sara D. Woodward*
Sara D. Woodward
Andrea Hutting
Assistant United States
Attorneys
211 W. Fort. St. Suite 2001
Detroit, Michigan 48226
313-226-9180
Sara.woodward@usdoj.gov