UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                        Case No. 16-20227

      v.                                   Hon. Bernard A. Friedman

RYON LENELL TRAVIS,
      a/k/a "Dontrez,"

              Defendant.

---

## GOVERNMENT'S SENTENCING MEMORANDUM

---

Ryon Travis orally and anally penetrated his young daughter and took pictures of the abuse. And he exploited a vulnerable woman for his own profit, chaining her at the neck to a pole when she wanted to stop performing the commercial sex dates he arranged. Travis has never accepted responsibility or expressed remorse for the crimes he committed. At trial, he tried to influence the adult victim's testimony by signing "yes" and "no" to her. His influence on the adult victim—even six years after the offense—was apparent.

Travis's sentencing guideline range is life. The government respectfully requests that the Court sentence him to not less than 50 years in prison.

## *Procedural History*

In March 2016, the grand jury returned a four-count indictment charging Ryon Travis with (1) production of child pornography; (2) transportation of child pornography; (3) possession of child pornography; and (4) sex trafficking of an adult victim using force and coercion. Jury trial began on July 19, 2022. The government presented witnesses over the course of three days. The jury returned a verdict of guilty on all counts on July 25, 2022.

## *Statement of Facts*

On March 2, 2016, West Bloomfield police officers searched Travis's residence on Tuller Street in Detroit for evidence of identity theft. (PSR ⁋ 11.) During the search, police seized electronic devices from the home. Travis was home during the search and spoke with officers. Travis showed the police which phone belonged to him—an LG Leon cell phone (Gov't Trial Exhibit 3)—and entered the passcode to unlock the device.

Back at the police department, detectives found numerous images on Travis's cell phone depicting the oral and anal penetration of a young girl, MV-1. (PSR ¶ 12.) Police also saw that on January 27, 2016, Travis sent a screenshot of his photo gallery as a text message to his contact "Tush My Wife Sugar" (later determined to be R.K., one of Travis's "wives" who also lived at the Tuller home). The screenshot included images of sexual abuse.

Police noticed that in some of the photographs depicting the sexual abuse of MV-1, a distinctive bedsheet with a blue and green pattern was visible. (PSR ¶ 14.) The same sheet was also in search warrant photographs taken in one of the bedrooms on Tuller Street. (Gov't Trial Exhibit 4.) West Bloomfield P.D. attempted to identify MV-1 but was initially unsuccessful.

West Bloomfield P.D. contacted federal authorities, and HSI began to investigate the child pornography on Travis's phone. (PSR ¶ 17.) On March 21, 2016, HSI executed a federal search warrant at the Tuller Street address. (PSR ¶ 17.) When officers entered the home, they found an adult victim (AV-1) in the living room chained around her neck to a pole in the middle of the room. (Gov't Trial Exhibit 6.) Once

she was released and taken out of the home, AV-1 told agents that Travis chained her to the pole so that she would not leave. She also disclosed that Travis was prostituting her and the other female residents in the home, all of whom Travis considered his "wives." During the search of the home, agents seized numerous items, including the same blue and green bedsheet from the child pornographic images, a water jug depicted in the images, and the chain and locks used to restrain AV-1. (Gov't Trial Exhibits 7, 8, 9.)

Travis spoke with HSI agents. (PSR ¶ 19.) He admitted he was the only adult male who resided in his residence. He admitted to sending a text message with images of child pornography. He admitted that MV-1 was his daughter but refused to provide her name or custodian's name to law enforcement, claiming that it was "confidential." Travis further stated that MV-1 stayed at his house at some point a few months prior, maybe around Christmas, New Year's, or Martin Luther King Day.

HSI ultimately confirmed that MV-1 was Travis's daughter born in 2010. During trial, an HSI computer forensic agent testified that he reviewed Travis's LG Leon phone and determined that the images depicting MV-1's sexual abuse were taken on April 25, 2015, when MV-

1 was four years old, and on January 1, 2016, when MV-1 was five years old. The images were stored on the phone's SD card. The computer forensic agent also found some of the same images of child pornography on a Kyocera phone, another cell phone recovered from the search of the Tuller residence.

AV-1 testified at trial. She has a hearing impairment and receives social security disability income. She said that she first lived with Travis and his other "wives" at a house on Hubbell Street in Detroit, and that they later moved to the home on Tuller Street. She said that Travis convinced her to engage in commercial sex. At some point, she did not want to engage in prostitution anymore, and she told Travis this. They had a physical fight and she went to the hospital. She also testified that she "kept trying to leave," and Travis "kept finding [her]." She said that she did not want to be at the house any longer, and that she was "tired of what was going on." Because she kept trying to leave, Travis chained her at the neck to a pole in the living room.

AV-1 testified that when customers came to the house, Travis required the women to line up, scantily clad or nude, so the customer could choose which woman he wanted to "spend time with," which

included sex. Men paid Travis, whom they met after they were in the house. Travis often displayed guns when he negotiated the price for the time with one of the women. The "dates" took place in a back bedroom on the first floor of the Tuller residence.

HSI agents subpoenaed Backpage.com for records of prostitution advertisements. In response, they received more than 200 ads that ranged from August 2014 through March 21, 2016. The ads included photographs of AV-1 and the other women; many of the images were also stored on Travis's LG Leon phone. (Gov't Trial Exhibit 13a, 13b.)

Travis was detained pending trial. From jail, Travis made phone calls to some of his wives. During the calls, he said he did not want AV-1 to leave him and he would give her freedom, which he owed her, and her cell phone, if she came home every night. (Gov't Trial Ex. 14a, 14b.) He also said: "I think they gonna try to use [AV-1] against me in court. . . And tell her I will use yes and no sign language to kind of, help, with the outcome of things." (Gov't Trial Exhibit 14e.)

During AV-1's testimony, a deputy U.S. Marshall noticed that Travis was trying to gesture to AV-1. Travis's gestures were consistent with American Sign Language for "yes" and "no." (Gov't Trial Exhibit

18a, 18b.) In another phone call, Travis also directed one of his wives to get in touch with his son to tell him not to cooperate with any investigation about his father. (Gov't Trial Exhibit 14c, 14d.)

### *Sentencing Guidelines*

The Supreme Court has noted that, in formulating the sentencing guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a). *United States v. Rita*, 551 U.S. 338 (2007). While advisory, the guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350. Moreover, the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).

The Probation Department calculated Travis's guideline range to be life imprisonment, based on a total offense level of 51. (PSR ¶ 60.) Under the guidelines, the highest possible offense level is 43, and "in those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as a 43." (PSR ¶ 60.) Travis's case

is one of those rare instances. Travis's guideline range is life imprisonment, and this is the appropriate starting place when fashioning a sentence for him.

### Nature and Circumstances of the Offense

Travis victimized MV-1 and AV-1 in dramatically different but equally brutal ways. He produced child pornography depicting his oral and anal penetration of MV-1. MV-1 was only four and five years old at the time of the abuse. And Travis exploited AV-1's vulnerabilities for his own financial gain by forcing her to engage in commercial sex acts. When AV-1 tried to escape Travis's home, he found her and chained her at the neck to a pole to prevent her from leaving again.

Production of child pornography and sex trafficking using force and coercion are two of the most serious federal crimes. Both require a mandatory minimum term of 15 years imprisonment. But Travis's crimes are even more horrific than the average child pornography and sex trafficking offenses. Here, MV-1 was extraordinarily young, and the sex acts that Travis inflicted upon her were cruel and painful. And Travis didn't just use violence or threats to control AV-1; he chained her

up like an animal. Both of Travis's crimes show extreme disregard for human life and dignity.

### History and Characteristics of the Offender

Travis refused to participate in an interview with the Probation Department. (PSR ¶ 69.) As a result, there is limited information about his history and characteristics. Travis appears to have only one prior criminal conviction and no history of legitimate employment. (PSR ¶¶ 63, 82.) AV-1 testified that she lived and worked for Travis for over two years, and that she was the last of his four "wives" to begin prostituting for him. Based on this information, it seems that Travis was a professional pimp who supported himself by arranging the prostitution of women in his home. In addition, Travis has repeatedly told this Court that he does not believe the laws of the United States apply to him. From what we know of Travis's history and beliefs, the Court cannot have any confidence that if Travis was released, he would live a crime free life.

### Seriousness of the Offense, Promoting Respect for Law, and Providing Just Punishment

Travis's crimes are undoubtedly serious. The number of individuals that suffered—and will continue to suffer—because of

Travis's behavior bears repeating. First, Travis sexually assaulted MV-1 on multiple occasions. Not only will this haunt MV-1 for the rest of her life, but Travis's abuse has also caused damage to MV-1's mother and grandfather, both of whom testified at trial and were forced to identify MV-1 in sanitized child pornography images.

Travis abused AV-1 for years. AV-1's vulnerabilities were obvious to the Court and the jury during trial. Travis took advantage of her repeatedly, and the years that she spent in his home and under his control will impact her for the rest of her life.

Finally, Travis caused extreme damage to his young and impressionable 12-year-old son. At the time of the offense, his son lived with Travis and his wives and observed prostitution and sex trafficking firsthand. He also took care of his younger siblings, including MV-1, when they came over to the house. What Travis's son witnessed in Travis's home was beyond traumatic. And after Travis was arrested in 2016, his son's life was turned upside down. He never saw his younger siblings again.

What is just punishment for all these damaged lives left in his Travis's wake?  The sentencing guidelines recommend a life sentence.

No number of years would make up for what Travis did to his victims. Considering Travis's disregard for human dignity and his steadfast refusal to accept responsibility, a sentence of at least 50 years' imprisonment will meet these sentencing goals.

### Deterrence and Protection of the Public

Travis needs to be deterred. And the public needs to be protected from him. Travis abused an extremely young child as well as a vulnerable adult. His crimes are so serious that long-term incarceration is the only way to keep the public safe. He poses a danger to children and adults alike and a sentence of at least 50 years will serve the goal of protecting the public from further crimes of the defendant.

### Avoiding unwarranted sentence disparities

A significant sentence is necessary to avoid unwarranted sentencing disparities. A sentence of at least 50 years fits comfortably within the range of sentences imposed on the most serious producers of child pornography. *See United States v. Boyle,* 15-20741 (E.D. Mich. 2017) (defendant with prior criminal convictions sentenced to 60 years for sexual exploitation of children);  *United States v. Pierce*, 16-20192 (E.D. Mich. 2016) (defendant with no prior criminal convictions

sentenced to 90 years for sexual exploitation of his grandchildren);

*United States v. Steven Demink*, 10-20676 (E.D. Mich. 2010) (defendant

with no prior criminal convictions received life sentence based on his

online conduct where he manipulated women to have sex with their

children on camera for defendant); *United States v. Mario Asakevich,*

11-20343 (E.D. Mich. 2012) (repeat sex offender sentenced to life in

prison for online enticement); *United States v. James Frazee*, 10-20082

(E. D. Mich. 2010) (previously convicted sex offender who produced child

pornography of a 14 year-old girl, sentenced to life in prison); *United*

*States v. Bennie Grimes*, 14-20301 (E.D. Mich. 2014) (elderly defendant

with no criminal history sentenced to 60 years for sexual abuse of

granddaughter and her friends); *United States v. John Millmine*, 14-

20181 (E.D. Mich. 2015) (defendant sentenced to 50 years for production

of child pornography depicting young children).

Other courts around the country have likewise imposed life

sentences—or the equivalent of life sentences—against significant child

pornography offenders.  *See United States v. Williams*, 2013 WL

6851125 (11th Cir. Dec. 31, 2013) (unpublished) (100 years sentence

affirmed); *United States v. Goodale*, 2013 WL 6847032 (8th Cir. Dec. 30,

2013) (life sentence reasonable for defendant who sexually abused two boys); *United States v. Hamilton*, 2013 WL 6726953 (2d Cir. Dec. 23, 2013) (unpublished) (1800-month sentence affirmed after defendant pleaded guilty to five counts of production of child pornography, court stated "Nor are we persuaded that a life sentence in the case at bar overstates the seriousness of the offense given Hamilton's role in producing graphic child pornography by filming himself sexually abusing children as young as four years old."); *United States v. Hodge*, 729 F.3d 717 (7th Cir. 2013) (1380-month sentence reasonable for production and other child pornography crimes, including the abuse of a 9 year-old girl); *United States v. Herrick*, 2013 WL 275908 (6th Cir. Jan. 25, 2013) (unpublished) (1140-month sentence reasonable for three counts of production of child pornography for a Boy Scout camp director); *United States v. Boroczk*, 2013 WL 197709 (7th Cir. Jan. 18, 2013) (70-year production sentence reasonable); *United States. v. Cannon*, 703 F.3d 407 (8th Cir. 2013) (840 months for sexual exploitation of a child upheld); *United States v. Boyle*, 2013 WL 4256278 (5th Cir. Aug. 12, 2013) (unpublished) (upheld 70-year sentence for production and possession); *United States v. Snyder*, 425 Fed. Appx. 64

(2d Cir. 2011) (upholding a 75-year sentence for five counts of production of child pornography as substantively reasonable); *United States v. Castillo*, 2011 WL 2014943 (11th Cir. 2011) (upholding a sentence of 1,560 months (130 years) for four counts of production of child pornography and one count of possession of child pornography as substantively reasonable); *United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009) (affirming as reasonable a 100-year (1,200 months) sentence for a first-time offender who sexually abused a 13-year-old girl and produced pornographic images of the victim); *United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006) (upholding as reasonable a 140-year sentence for two counts of producing child pornography and one count of distribution); *United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five 8–to–11 year-old girls, including two of his granddaughters).

These are just some examples of the sentences imposed on significant child pornography offenders. But Travis also trafficked AV-1, and post-trial sentences for sex trafficking are also very long. *United States v. Devin Smith,* 14-20303 (E.D. Mich. 2014) (defendant convicted

of trafficking adult victims sentenced to 30 years after trial); *United States v. Willie Curry*, 13-20887 (E.D. Mich. 2015) (defendant sentenced to 35 years in prison for trafficking three minor victims using force and coercion); *United States v. Richard Jackson,* 16-20799 (E.D. Mich. 2021) (defendant sentenced to 20 years for trafficking one adult victim).

## Conclusion

Travis is only 38 years old. His crimes demonstrate that he is very dangerous. A sentence of at least 50 years is necessary to protect the public.

Respectfully Submitted,

Dawn N. Ison
United States Attorney

*s/ Sara D. Woodward*
Sara D. Woodward
Andrea Hutting
Assistant United States Attorneys
211 W. Fort. St. Suite 2001
Detroit, Michigan 48226
313-226-9180
Sara.woodward@usdoj.gov

Dated: January 17, 2023

Certificate of Service

I hereby certify that on Tuesday, January 17, 2023 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will notify counsel of record, Martin E. Crandall, of the filing.


*s/ Sara D. Woodward*
Sara D. Woodward
Assistant United States Attorney